IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHARON A. ROBINSON, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:18-00353-N |
| ) | |
| NANCY BERRYHILL, *Acting* ) | |
| *Commissioner of Social Security*, ) | |
|     Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sharon A. Robinson brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* Upon consideration of the parties' briefs (Docs. 13, 14) and those portions of the administrative record (Doc. 12) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, and with the benefit of oral argument, the Court finds that the Commissioner's final decision is due to be **REVERSED** and **REMANDED** under sentence four of § 405(g).[1]

---

[1] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 17, 18).

# I. *Background*

Robinson filed applications for a period of disability, DIB, and SSI with the Social Security Administration ("SSA") on November 26, 2013. Both applications alleged disability beginning April 25, 2010.[2] After her applications were initially denied, Robinson requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review, which was held on June 11, 2015. On July 2, 2015, the ALJ issued an unfavorable decision on Robinson's applications, finding her not disabled under the Social Security Act and thus not entitled to benefits. (*See* R. 153 – 167).

Robinson sought review of the ALJ's July 2015 unfavorable decision with the Appeals Council for the Office of Disability Adjudication and Review. On November 7, 2016, the Appeals Council issued an order vacating that unfavorable decision and remanding Robinson's case to the ALJ with various instructions. (*See* R. 174 – 176). The ALJ held another hearing on September 5, 2017, and issued a second unfavorable decision on Robinson's applications on October 16, 2017. (*See* R. 16 – 33).

---

[2] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured. 42 U.S.C. § 423(a)(1)(A) (2005). For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. 20 C.F.R. § 416.202–03 (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

The Commissioner's decision on Robinson's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied her request for review of the ALJ's second unfavorable decision on June 11, 2018. (R. 1 – 5). Robinson subsequently filed this action under § 405(g) and § 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.  *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir.

2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). The Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[3] "In determining whether substantial evidence exists, [a

---

[3] Nevertheless, "[m]aking district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts. With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him." *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings).

court] must...tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). *See also McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("We are constrained to conclude that the administrative agency here...reached the result that it did by focusing upon one aspect of the evidence and ignoring other parts of the record. In such circumstances we cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of

---

"[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *id.*, and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it...' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added).

    Moreover, the Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court...Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal).

evidence which supports that decision, but to disregard other contrary evidence. The review must take into account and evaluate the record as a whole.").

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g., Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) ... As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir.

1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[4]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*,

---

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III. *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Robinson met the applicable insured status requirements through June 30, 2014, and that she had not engaged in substantial gainful activity since April 25, 2010, the alleged disability onset date. (R. 22). At Step Two, the ALJ determined that Robinson had the following severe impairments: anemia, generalized anxiety disorder, and intellectual disability. (R. 22). At Step Three, the ALJ found that Robinson did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in the Listing of Impairments. (R. 22 – 26).

At Step Four, the ALJ determined that Robinson had the residual functional capacity (RFC) "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[6] except [she] is capable of performing only unskilled work due to Full Scale IQ scores and frequent difficulties in social functioning." (R. 27 – 32).[7] The

---

[6] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. *See also* 20 C.F.R. §§ 404.1567, 416.967.

[7] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine

ALJ then determined that Robinson had no past relevant work. (R. 32). At Step Five, after considering the testimony of a vocational expert (VE),[8] the ALJ found that there exist a significant number of jobs in the national economy that Robinson could perform given her RFC, age, education, and work experience. (R. 41 – 42). Thus, the ALJ found that Robinson was not disabled under the Social Security Act. (R. 42).

IV. *Analysis*

A.

Robinson's first claim of error is that the ALJ improperly failed to include

---

> whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

[8] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

"any specific vocational limitations" in the RFC. As the Commissioner correctly points out, administrative rules promulgated by the Commissioner recognize that "[u]nderstanding, remembering, and carrying out simple instructions[, m]aking judgments that are commensurate with the functions of unskilled work--i.e., simple work- related decisions[, r]esponding appropriately to supervision, co- workers and usual work situations[, and d]ealing with changes in a routine work setting" are all "mental activities…generally required by competitive, remunerative, unskilled work…" Social Security Ruling (SSR) 96-9p, 1996 WL 374185, at *9 (July 2, 1996). *See also* Program Operations Manual System (POMS) DI 25020.010(A)(3) (SSA Apr. 5, 2007) ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to: understand, carry out, and remember simple instructions; make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions; respond appropriately to supervision, coworkers and work situations; and deal with changes in a routine worksetting." (bullet points omitted)).[9] In the absence of any indication to the

---

[9] "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration. *Sullivan v. Zebley,* 493 U.S. 521, 531 n. 9, 110 S. Ct. 885, 891 n. 9, 107 L. Ed. 2d 967 (1990). Even though the rulings are not binding on [federal courts], [they are] nonetheless accord[ed] great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance. *B. ex rel. B. v. Schweiker,* 643 F.2d 1069, 1071 (5th Cir. 1981)." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (per curiam) (unpublished).

Similarly, "[t]he Social Security Administration's Program Operations Manual System (POMS) [is] the publicly available operating instructions for processing Social Security claims…While these administrative interpretations are not products of formal rulemaking, they nevertheless warrant respect…" *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371,

contrary, ALJs are presumed to be familiar with SSA rules and regulations. Thus, by assigning Robinson the ability to do "unskilled work," the ALJ necessarily found that her ability to perform each of those mental activities was not substantially impaired, and that no additional mental limitations need be included in the RFC. Accordingly, Robinson's first claim of error is **OVERRULED**.

## B.

Robinson's second claim of error is that the ALJ improperly "included the limitations of 'Full scale IQ of 48 and frequent difficulties in social functioning' " in his hypothetical question to the VE. Robinson claims that "[t]he limitations do not have specific vocational meanings[,]" that "the hypothetical did not provide for specific functional limitations[,]" and that "it is impossible for a reader of the decision to know how the VE defined these terms and the basis for her answer." (Doc. 13 at 5). The undersigned concludes that, because the ALJ failed to include the RFC's "unskilled work" limitation in his hypothetical, the ALJ's Step Five determination was not supported by substantial evidence. *See Winschel*, 631 F.3d at 1180 (" 'In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.' " (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam))).

The ALJ posed a single hypothetical to the VE at the hearing held following remand from the Appeals Council, describing "the following hypothetical female

---

385 (2003). *Accord Stroup v. Barnhart*, 327 F.3d 1258, 1262 (11th Cir. 2003) ("While the POMS does not have the force of law, it can be persuasive.").

person[:] This hypothetical female person is presently 47 years old, having been born December the 10th, 1969. She has completed 11 years of formal schooling in a special education mode. She can read and write. She has no prior significant gainful activity. She has the residual functional capacity to perform the full range of light work with the following limitations. She has a full-scale IQ of 48. She has frequent difficulties in social functioning." (R. 54). The VE testified that such a hypothetical individual could perform the jobs of flower picker, egg washer, and scrap separator, and the ALJ accepted that testimony at Step Five in finding that Robinson was not disabled. (R. 55 – 56).

The RFC limited Robinson to "unskilled work," with the ALJ citing her "Full Scale IQ scores and frequent difficulties in social functioning" only as evidence justifying that limitation (i.e. the limitation was "due to" those factors), rather than as separate functional limitations themselves.[10] However, contrary to the Commissioner's assertion that the hypothetical "matched the RFC assessment" (Doc. 14 at 4), the ALJ's hypothetical omits any mention of the "unskilled work" limitation,[11] instead only stating the factors on which the ALJ based that limitation. By failing to include the limitation that the ALJ believed those factors supported, he essentially left it to the VE to draw her own conclusions about the meaning of

---

[10] The Commissioner acknowledges as much in her brief. (See Doc. 14 at 4 ("The statements to which Plaintiff points, her full scale IQ scores and difficulties in social functioning, were not functional limitations but were rather an explanation of the bases for the limitation to unskilled work…")).

[11] Robinson's representative also posed hypotheticals to the VE after the ALJ posed his. However, neither of the representative's hypotheticals included the limitation of "unskilled work."

those factors. However, the RFC is a critical component of the Step Five determination, *see Phillips*, 357 F.3d at 1239 ("At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant 'can make an adjustment to other work.' " (quoting 20 C.F.R. § 404.1520(a)(4)(v))), and the responsibility for weighing the evidence and formulating the RFC belongs to the ALJ, not the VE. *See Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984) (per curiam) ("[I]t is the [Commissioner], acting through the ALJ,…who is charged with the duty to weigh the evidence and to determine the case accordingly."); 20 C.F.R. §§ 404.1546(c), 416.946(c) ("If your case is at the administrative law judge hearing level…, the administrative law judge…is responsible for assessing your residual functional capacity.").[12]

Because the ALJ's hypothetical to the VE did not comprise all of Robinson's

---

[12] The ALJ's reliance on the VE's answer to his hypothetical is also questionable because the VE prefaced her answer with the following qualifier:

> I will say this, Your Honor. I will go back on my question I answered. Forty-eight is a very low IQ. It's really difficult for me to even look at the consistencies of being able to pass a driver's license exam and being able to read and write, which the claimant testified to, but yet have a 48 IQ, which is extremely low. It just seems inconsistent. So part of my answer in other work, yes, is knowing that she can read and write and that she did pass, even if it took her ten times, a driver's license exam. So I just wanted to clarify what my yes was about.

(R. 54 – 55). The ALJ did not attempt to address the VE's concerns, instead simply responding "all right" and requesting that she name "three jobs" Robinson could perform. (R. 55). However, because the undersigned has concluded that the ALJ's failure to include the "unskilled work" limitation in his hypothetical was itself reversible error, the undersigned does not address whether this additional consideration would also be reversible error.

impairments, the VE's response to that hypothetical, on which the ALJ relied at Step Five in finding Robinson not disabled, does not constitute substantial evidence supporting the ALJ's determination. Accordingly, the Court **SUSTAINS** Robinson's second claim of error.[13]

Robinson requests that the Commissioner's decision "be reversed and [Robinson] found disabled[,]" and only requests a remand for further proceedings in the alternative. (Doc. 13 at 9). The United States Supreme Court has cautioned that a court reviewing an agency decision "is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry. Rather, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (citation and quotations omitted). In the context of Social Security judicial review specifically, the Eleventh Circuit has recognized that generally remand to the Commissioner for further proceedings is warranted where "the ALJ has failed to apply the correct legal standards." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). While this Court may enter an order "awarding disability benefits where the [Commissioner] has already considered the

---

[13] In her third and final claim of error, Robinson asserts that the ALJ's mental RFC is not supported by substantial evidence. In pressing this claim, Robinson's primary argument is that the ALJ's reasons for assigning "lesser weight" to parts of the opinion of two-time examining psychologist Dr. Nina Tocci – that Robinson "would be unable to work structured employment even with constant supervision and oversight, as well as her Full Scale IQ score of 48" (R. 32) – are contradictory and not supported by substantial evidence. In light of the fact that other reversible error has already been shown, *see supra*, the Court declines to decide whether Robinson's third claim also constitutes reversible error.

essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt[,]" *id.,* Robinson has failed to convince the undersigned that this standard is met here.[14]

Accordingly, the Court finds that the Commissioner's final decision denying Robinson's applications for benefits is due to be **REVERSED** and **REMANDED** to the Commissioner under sentence four of § 405(g) for further administrative proceedings consistent with this decision.

---

[14] *Compare Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991) ("The credibility of witnesses is for the Secretary to determine, not the courts…The decision of the Secretary here, however, rests not so much on the credibility of the 'history of pain; presented by Carnes, as on the adoption of a legal standard improper under Listing 10.10(A). []The record in this case is fully developed and there is no need to remand for additional evidence. Based on the facts adduced below and after application of the proper legal standard, we hold that claimant met the requirements of Listing 10.10(A) as early as 1982."), *with Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam) ("Though we have found that the ALJ erred in his application of the legal standards, at this time we decline to enter an order requiring entitlement to disability benefits. While it is true that the opinions of Drs. Todd and Raybin provide strong evidence of disability, it is at least arguable that the report of Dr. Morse is to the contrary. Consequently, it is appropriate that the evidence be evaluated in the first instance by the ALJ pursuant to the correct legal standards."), *and Hildebrand v. Comm'r of Soc. Sec.*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854238, at *7 (M.D. Fla. May 4, 2012) ("The errors noted here compel a return of the case to the Commissioner to evaluate the evidence and make findings in the first instance. For the reasons set forth above, the Court finds that certain of the conclusions of the ALJ were not made in accordance with proper legal standards and are not supported by substantial evidence. The Court does not find that only one conclusion can be drawn from the evidence; but that the conclusion that was drawn did not meet the standard of review. Under such a circumstance, it would not be appropriate for this Court to substitute its opinion of the weight to be given the evidence for that of the Commissioner. While the Court has the power to do just that in an appropriate case, the Court finds this is not such a case."), *report and recommendation adopted*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854249 (M.D. Fla. May 21, 2012).

## V. *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Robinson's November 26, 2013 applications for a period of disability, DIB, and SSI is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings consistent with this decision. This remand under sentence four of § 405(g) makes Robinson a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

Should Robinson be awarded Social Security benefits on the subject applications following this remand, under Federal Rule of Civil Procedure 54(d)(2)(B), the Court hereby grants Robinson's counsel an extension of time in which to file a motion for fees under 42 U.S.C. § 406(b) until thirty days after the date of receipt of a notice of award of benefits from the SSA.[15] Consistent with 20 C.F.R. § 422.210(c), "the date of receipt of notice … shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary." If multiple award notices are issued, the time for filing a § 406(b) fee motion shall

---

[15] *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006) (per curiam) ("Fed. R. Civ. P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Blitch v. Astrue*, 261 F. App'x 241, 242 n.1 (11th Cir. 2008) (per curiam) (unpublished) ("In *Bergen v. Comm'r of Soc. Sec.,* 454 F.3d 1273 (11th Cir. 2006), we suggested the best practice for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the procedural framework of a fee award under 42 U.S.C. § 406 is for a plaintiff to request and the district court to include in the remand judgment a statement that attorneys fees may be applied for within a specified time after the determination of the plaintiff's past due benefits by the Commission. 454 F.3d at 1278 n.2.").

run from the date of receipt of the latest-dated notice.

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 8th day of May 2019.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**